UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH PALMER,                    :

    Plaintiff,                :

V.                                :   CASE NO. 3:05-CV-943 (RNC)

NEW BRITAIN GENERAL HOSPITAL,     :
NEWINGTON VOLUNTEER AMBULANCE     :
CORPS, INC.,                      :
DANIEL KAUFMAN AND                :
JEANINE ALLIN,                    :

    Defendants.               :


RULING AND ORDER

    Plaintiff Joseph Palmer seeks damages against Newington
police officers Daniel Kaufman and Jeanine Allen under 42 U.S.C.
§ 1983 claiming that they violated his rights under the Fourth
Amendment and exceeded their authority under Connecticut's
protective custody statute, Conn. Gen. Stat. § 17a-683, when they
determined that he should be detained and transported to a
hospital without his consent as a person who appeared to be
incapacitated by alcohol.  In addition, he claims that the
officers used excessive force.  The complaint, which was
originally brought in state court, also includes claims under
state law against the officers, Newington Volunteer Ambulance
Corps and New Britain General Hospital.  Officers Kaufman and
Allin have moved for summary judgment on all the claims in the
complaint.  (Docs. 60).  For reasons explained below, I conclude
that the officers lacked probable cause to take the plaintiff

into protective custody but are entitled to qualified immunity because reasonable officers could have made the same mistake.  I also conclude that the evidence is insufficient to support a verdict in favor of the plaintiff on the excessive force claim. Accordingly, the officers' motion for summary judgment is granted on the federal claims.  Because these are the only federal claims in the case, I decline to exercise supplemental jurisdiction over the remaining claims, which are remanded to state court.

I.   <u>Summary Judgment</u>

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  To avoid summary judgment, plaintiff must point to evidence that would permit a jury to return a verdict in his favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  In determining whether his claims raise a jury issue, the evidence must be viewed in a manner most favorable to him. <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996).

II.  <u>Facts</u>

The summary judgment record, viewed fully and most favorably to the plaintiff, would permit a jury to reasonably find the following facts regarding the federal claims against the officers.  On May 24, 2003, sometime after 11:00 p.m., the plaintiff went to a nightclub in Newington.  He was 21 years of

2

age.  After drinking a beer, he accepted a bartender's suggestion that he try a cocktail known as a "Red Death," which consists of vodka, Southern Comfort, Amaretto, sloe gin, triple sec and orange juice.  He drank the cocktail then had another.

At 2:00 a.m., the club closed.  Plaintiff left the club without assistance and walked to his car, which was parked in a nearby lot.  As he was unlocking his car door, he heard the club's bouncer yell, "Hey, stop that kid," and saw the bouncer running toward him.  He responded to the bouncer's approach by getting behind the wheel of the car and locking the doors.  The bouncer ran to the car, knocked on the driver's window and told the plaintiff to get out.  The plaintiff shook his head no and ducked down in the driver's seat.

A club employee telephoned the Newington Police Department and asked that an officer be dispatched to deal with an intoxicated person.  Officer Kaufman soon arrived in response to the call.  After speaking briefly with the bouncer, Officer Kaufman knocked on the driver's window of the plaintiff's car and ordered the plaintiff to get out.  The plaintiff responded by shaking his head no.  After trying again without success to get the plaintiff to exit the car, Officer Kaufman used his radio to call for a "Slim Jim," a device for opening locked car doors. The plaintiff then stepped out of the car.

Officer Kaufman ordered the plaintiff to sit in the back of

his police car.  In response to the officer's order, the plaintiff became visibly distressed.  The officer asked the plaintiff if he knew someone who could give him a ride home.  The plaintiff said no and began to cry.  The officer asked the plaintiff why he was so upset.  The plaintiff responded that he could not explain why.  The officer then contacted the Newington Volunteer Ambulance Corps to take the plaintiff to New Britain General Hospital for treatment under the authority of Connecticut General Statute § 17a-683(b).  Plaintiff waited in the police car for the ambulance to arrive.

An ambulance arrived within minutes.  By that time, defendant Allin, a Newington police sergeant, had also appeared on the scene.  The officers told the plaintiff that he was going to be transported by ambulance to a hospital.  The plaintiff responded that he did not want to go.  Sergeant Allin replied that the plaintiff's only alternative was to go to jail.  The police officers then guided the plaintiff from the police car to the ambulance.  Plaintiff climbed the stairs to the ambulance without assistance and went inside.

Ambulance staff seatbelted plaintiff's legs to the stretcher and transported him to the hospital.  During the trip, an emergency medical technician riding with the plaintiff in the ambulance documented her initial clinical impression that he appeared to be intoxicated.  She also noted that he appeared to

4

be "alert."  The ambulance arrived at New Britain General
Hospital at 2:36 a.m.

   The plaintiff was admitted to the Hospital shortly after
3:00 a.m.  He initially refused to provide a blood sample for
toxicology analysis but consented when a nurse told him a
security guard could force him to provide one.  Plaintiff's blood
sample was taken at around 3:10 a.m, approximately one hour after
the onset of his interaction with Officer Kaufman.  Analysis of
the sample showed that he had a blood alcohol level of 0.12%,
above Connecticut's 0.08% limit for driving.  See Conn. Gen.
Stat. § 14-227a.  The attending nurse diagnosed plaintiff as
having ineffective coping related to alcohol ingestion.
Plaintiff subsequently fled from the hospital wearing only a
hospital gown.  He was recaptured and restrained.   At 5:15 a.m.,
he was discharged with instructions to avoid heavy alcohol use.

III. Discussion

   A. Unreasonable Seizure

   Plaintiff claims that defendants Kaufman and Allin violated
his Fourth Amendment right to be free from an unreasonable
seizure.[1]  The officers move for summary judgment based on
qualified immunity.  A police officer is entitled to qualified

---

   [1]  Plaintiff also invokes the Fifth Amendment but his claim
that he was unlawfully seized and transported to a hospital is
properly analyzed under the Fourth Amendment.  See Green v. City
of New York, 465 F.3d 65, 85 (2d Cir. 2006)

immunity against a Fourth Amendment claim if it was objectively reasonable for him to believe his action was lawful.  See Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).  Under this standard, even if the officers violated the plaintiff's right to be free from an unreasonable seizure, they can be held liable for the violation only if "no officer of reasonable competence could have made the same choice in similar circumstances."  Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003).

Whether the defendants' seizure and detention of the plaintiff without his consent violated the Fourth Amendment depends on whether they had probable cause to take these actions under the protective custody statute, Conn. Gen. Stat. § 17a-683. See Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 590 (10th Cir. 1999) (probable cause standard governs constitutionality of seizure for involuntary detoxification).

Section 17a-683(a) provides that a police officer finding a person "who appears to be intoxicated in a public place and in need of help" may, with the person's consent, assist him to his home, a treatment facility, or a hospital.  Section 17a-680(13) defines an "intoxicated person" as one "whose mental or physical functioning is substantially impaired as a result of the use of alcohol or drugs."  In contrast, when an officer finds a person who "appears to be incapacitated by alcohol" - that is, a person who, "as a result of the use of alcohol has his judgment so

6

impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment," Conn. Gen. Stat. § 17a-680(11) - the officer "shall" take the person into protective custody and have him brought to a treatment facility that provides medical triage, even without his consent.  Conn. Gen. Stat. § 17a-683(b).

The officers seized and detained the plaintiff under § 17a-683(b).  Whether their actions violated the Fourth Amendment thus depends on whether there was probable cause to believe that he was "incapacitated" as defined in the statute.  To date, no court has analyzed the circumstances justifying an officer's determination that a person appears to be incapacitated by alcohol within the meaning of the statute.  Cf. DeRay v. Gallagher, 164 F.3d 617 (Table), 1998 WL 650577, at *1-2 (2d Cir. 1998) (assuming in dicta that individual who was observed "staggering along the roadside" and was "belligerent" was incapacitated); Swanson v. City of Groton, No. X04CV030104164S, 2007 WL 4105513, at *4-6 (Conn. Super. Oct. 26, 2007) (assuming without deciding that person visibly intoxicated and threatening but able to walk was incapacitated).

Section 17a-683 is derived in part from the Uniform Alcoholism and Intoxication Treatment Act.  See Connecticut General Assembly House Proceedings 1974, Vol. 17, Part 10 at 4822

(May 1, 1974).[2]  The Uniform Act, like the Connecticut statute, differentiates between persons who appear intoxicated and may consent to being assisted home or to a treatment facility, and persons who appear to be incapacitated by alcohol and "shall" be taken into protective custody.  Unif. Alcoholism and Intoxication Treatment Act § 12, 9 U.L.A. 57-110 (1971) ("Uniform Act").  The Uniform Act's definitions of incapacitation and intoxication also are substantially similar to Connecticut's statutory definitions. Uniform Act at § 2.[3]  Commentary to the Uniform Act states that only "[a] small minority of intoxicated persons are incapacitated in that they are unconscious or incoherent or similarly so impaired in judgment that they cannot make a rational decision with regard to their need for treatment." Uniform Act at § 12.  Reading § 17a-683 in light of the Uniform Act and its commentary, I conclude that § 17a-683(b) applies only to the small minority of intoxicated persons who appear to be incapable of making a rational decision regarding their need for treatment.

_____

[2] Connecticut revised the law in 1975 to make it conform more closely to the Uniform Act and "clear[ ] up . . . certain constitutional questions on individual liberties and individual civil rights . . . ."  Transcript of Judiciary Committee Hearing at 836 (April 4, 1975).

[3] The Uniform Act's definition of "incapacitated by alcohol" differs from Connecticut's in that it encompasses persons who are "unconscious" in addition to persons whose judgment is so impaired as to make them incapable of realizing their need for treatment.  Uniform Act at § 2(9).

Protective custody statutes can withstand constitutional challenge if they require a determination that detaining the person is reasonably necessary to avoid a substantial risk of physical harm.  See Donahue v. R.I. Dep't of Mental Health, Retardation and Hosps., 632 F. Supp. 1456, 1477-78 (D. R. I. 1986) (reading a dangerousness requirement into Rhode Island statute allowing the emergency commitment of individuals "incapacitated by alcohol").  See also Recovery Northwest v. Thorslund, 851 P.2d 1259, 1261 (Wash. Ct. App. 1993) (statute held unconstitutional because it did not require a "substantial risk" of harm).  Prohibiting officers from seizing a person for involuntary detoxification unless he poses a danger to himself or others also comports with Second Circuit precedent requiring dangerousness to justify involuntary hospitalization in other contexts.  See, e.g., Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003).  Construing the Connecticut statute in light of these cases, I conclude that Officers Kaufman and Allin lacked probable cause to seize the plaintiff unless they reasonably believed both that (1) he was incapable of making a rational decision with regard to his need for treatment and (2) this incapacity created a substantial risk of harm to himself or others.

Based on the facts available to the officers at the time, viewed most favorably to the plaintiff, this standard was not

9

met.  Plaintiff was fully conscious, aware of his whereabouts,
able to react to people and events and capable of communicating.
He got out of his car when he overheard Officer Kaufman call for
a "Slim Jim."  He repeatedly stated that he did not want to go to
a hospital.  He was able to walk to Kaufman's police car and
climb into the ambulance without difficulty.  Just minutes later,
the emergency medical technician found him to be "alert."
Neither Officer Kaufman nor Officer Allin asked the plaintiff
whether he would like a ride home – a question that could have
helped them assess whether he was capable of making rational
decisions and posed a risk of harm to himself or others.  See,
e.g., Commonwealth v. Tomeo, 507 N.E.2d 725, 727 (Mass. 1987)
(protective custody justified because intoxicated defendant was
presented with other alternatives but insisted on driving himself
home, thereby posing a risk to the safety of himself and others).
Officers Kaufman and Allin therefore did not have probable cause
to seize the plaintiff under § 17a-683(b).  Confronted with a
person who appeared to be "intoxicated" but not "incapacitated,"
they should have offered to arrange to have someone drive him
home rather than taking him into protective custody, and
reassessed the situation if the offer was refused.

Though in retrospect it is apparent that the seizure lacked
probable cause, the officers are entitled to qualified immunity.
Qualified immunity is designed to protect officers making

10

"split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving." Saucier v. Katz, 533 U.S. 194, 205 (2001), *overruled in part* Pearson v. Callahan, __ U.S. __, No. 07-751 (Jan. 21, 2009).  Plaintiff's constitutional right to be free from an unlawful seizure was clearly established at the time, but Officers Kaufman and Allin did not have the benefit of any judicial decisions to guide them in determining whether they had probable cause to invoke § 17a-683(b).  The statutory language by itself did not make it apparent that § 17a-683(b) applies only to a very small minority of severely impaired persons.

Without more legal guidance, competent officers could have made the same mistake in the circumstances.  Determining whether a person is incapacitated "involves the exercise of judgment," and "[a]n officer does not necessarily act at his peril when trying in good faith, though perhaps mistakenly, to decide what to do." Swanson, 2007 WL 4105513 at *7.  Officer Kaufman, having been dispatched to deal with an intoxicated person at 2:00 a.m., arrived to find the plaintiff ducked down in the driver's seat of his car, refusing to respond to the bouncer knocking on his window.  When Kaufman himself started knocking on the window and ordered plaintiff to leave the car, plaintiff did not respond in a manner demonstrating an ability to make sound judgments.  He simply shook his head and refused to comply with

the officer's order.  He states that he chose to remain in the
car because he did not believe the officer had a right to make
him get out, but there is no allegation he communicated this to
the officer.  His behavior after he finally got out of the car
provided further cause for concern.  He admits he began sobbing
and could not explain why.  His inability to offer any
explanation for his emotional distress provided reason to suspect
that he was incapable of making a rational decision regarding his
need for treatment.

A reasonable officer in the circumstances also could
conclude that plaintiff's apparent incapacity created a
substantial risk of harm to himself or others.  Plaintiff states
that he had no intention of driving but he did not disclose this
to the officers.  Given his condition and behavior, competent
officers could reasonably assume that he would try to drive if
left alone with access to his car.[4]  Plaintiff suggests that the
officers could have taken his car keys and called a taxi.  But
qualified immunity protects against this kind of 20/20 hindsight.

---

[4]  Plaintiff admits that, more than an hour after his
encounter with the officers, he fled from the Hospital wearing
only a gown, despite being unfamiliar with the area, and
struggled with hospital staff who were sent to bring him back.
He also admits that after he was brought back to the Hospital,
he persisted in yelling obscenities at hospital staff even when
nobody else was present in the room.  This behavior on the part
of the plaintiff provides further support for the view that at
the time he was taken into protective custody by the officers,
there was reason to believe his inebriated condition created a
risk of harm to himself and others.

Graham v. Connor, 490 U.S. 386, 396 (1989).  In short, the judgment call the officers made at the time, though perhaps mistaken, was one competent officers reasonably could make in the same circumstances.  Accordingly, they are entitled to qualified immunity.

     B.  Excessive Force

     Plaintiff claims that the officers used excessive force when they took him into protective custody.  An officer's application of force violates the Fourth Amendment if it is objectively unreasonable in the circumstances.  See Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004); Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996).  Viewing the record in a light most favorable to the plaintiff, he cannot sustain his burden of proving that any force used was objectively unreasonable.  As far as the record shows, all the officers did was assist the plaintiff to the ambulance.  Plaintiff has not shown that they used more force than necessary to assist him.  See Vazquez v. Marciano, 169 F. Supp. 2d 248, 252 (S.D.N.Y. 2001) (force used to push plaintiff's head down while putting him in police car cannot be deemed unreasonable).  Moreover, he admits that the officers' actions caused him no physical injury.  McAllister v. New York City Police Dept., 49 F. Supp. 2d 688, 698-699 (S.D.N.Y. 1999)(to prevail on claim that force used was excessive, plaintiff must demonstrate that he sustained some

13

actual injury).  Accordingly, the officers are entitled to judgment on this claim as a matter of law.[5]

IV.  <u>Conclusion</u>

For the foregoing reasons, the motion for summary judgment filed by defendants Kaufman and Allin is hereby granted (doc. # 60).  The federal claims against the officers are dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the state law claims against the officers and the other defendants.  These claims are remanded to state court.

So ordered this 13th day of February 2009.


                                    /s/ RNC
                            Robert N. Chatigny
                         United States District Judge


---

[5]  Plaintiff's response to the motion for summary judgment can be understood as arguing that the blood test conducted at the Hospital may provide a basis for imposing liability on the officers under the Fourth Amendment.  However, there is no allegation they were involved in ordering the blood test nor any allegation the test had a law enforcement purpose.  Accordingly, any such claim would be unavailing.  <u>See</u> <u>Anthony v. City of New York</u>, 339 F.3d 129, 142 (2d Cir. 2003).